**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LUKE COMBS,

      Plaintiff,                               Civil Action No.: 1:21-cv-03041

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

## <u>COMPLAINT</u>

Plaintiff, Luke Combs ("Luke Combs" or "Plaintiff") hereby files this Complaint against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and for their Complaint hereby alleges as follows:

### JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant domain names and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant

Internet Stores" or "Defendant Aliases"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

3. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District.

## INTRODUCTION

4. This action has been filed by Plaintiff to combat online counterfeiters who trade upon the reputation and goodwill of the American artist Luke Combs by selling and/or offering for sale products in connection with Plaintiff's LUKE COMBS Trademarks, which are covered by U.S. Trademark Registration Nos. 5,573,127; 5,417,705; and 5,573,124 (collectively, the "LUKE COMBS Trademarks"). The registrations are valid, subsisting, unrevoked, and uncancelled. The registrations for the trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b). Genuine and authentic copies of the U.S. federal trademark registration certificates for the LUKE COMBS Trademarks are attached as **Exhibit 1**.

5. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed the Plaintiff and his ability to police his rights against the hundreds of anonymous defendants which are selling illegal counterfeits at prices below an original:

<u>ORIGINAL</u>



https://www.lukecombs.com

<u>COUNTERFEIT</u>



6.      As Homeland Security's recent report confirms, counterfeiters act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal counterfeiting network:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. **Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks.** The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms have consumer visibility well beyond the seller's natural geographical sales area.
>                                                    . . .
> The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **A study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination**, making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.
>                                                    . . .
> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy.

*See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19 (emphasis added) attached hereto as **Exhibit 2**.

7.      Defendants typically use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables counterfeiters to stymie authorities:

> The scale of counterfeit activity online is evidenced as well by the significant efforts e-commerce platforms themselves have had to undertake. A major e-commerce platform reports that its proactive efforts prevented over 1 million suspected bad

actors from publishing a single product for sale through its platform and blocked over 3 billion suspected counterfeit listings from being published to their marketplace. Despite efforts such as these, private sector actions have not been sufficient to prevent the importation and sale of a wide variety and large volume of counterfeit and pirated goods to the American public.

. . .

A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked. On these sites, online counterfeiters can misrepresent products by posting pictures of authentic goods while simultaneously selling and shipping counterfeit versions.

. . .

Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

*Id.* at 5, 11, 12.

8.     E-commerce giant Alibaba has also made public its efforts to control counterfeiting on its platform.  It formed a special task force that worked in conjunction with Chinese authorities for a boots-on the ground effort in China to stamp out counterfeiters. In describing the counterfeiting networks it uncovered, Alibaba expressed its frustration in dealing with "vendors, affiliated dealers and factories" that rely upon fictitious identities that enable counterfeiting rings to play whack-a-mole                                              with                                              authorities:

# Fighting China's counterfeits in the online era

Xinhua | Updated: 2017-09-19 14:20                                    

BEIJING - A secret team in Chinese e-commerce giant Alibaba has the task of pretending to be online consumers who test-buy purchases from the billion-plus products on its platforms.

Alibaba's Anti-Counterfeiting Special Task Force, formed last year, actively works with local law enforcement agencies, said Qin Seng.

"After we clean up online shops selling counterfeits, the counterfeiters usually change their identities and places of dispatch, using more covert means to continue selling online," Qin said.

The team uses big data to identify counterfeits and the vendors, affiliated dealers and factories suspected of producing or selling counterfeit items. They pass evidence to the public security, administration of commerce and industry, quality inspection, food and drug supervision and other law enforcement agencies. At the same time, they investigate the evidence in the field.

The team faces many risks in their offline probes.

"Most counterfeiting dens are hidden and well-organized. For example, we encountered a village producing counterfeits. The villagers installed cameras everywhere and when they saw outsiders entering, they became vigilant and even threatened us," Qin said.

*See* Xinhua, *Fighting China's Counterfeits in the Online Era,* China Daily (Sept. 19, 2017), available at www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm (**Exhibit 3)**

9.  Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over the reputation and good-will enjoyed by the LUKE COMBS Trademarks, as well as the quality of goods bearing LUKE COMBS Trademarks. The rise of e-commerce as a method of supplying goods to the public exposes brand holders and creators that make significant investments in their products to significant harm from counterfeiters:

> Counterfeiting is no longer confined to street-corners and flea markets. The problem has intensified to staggering levels, as shown by a recent Organization for Economic Cooperation and Development (OECD) report, which details a 154 percent increase in counterfeits traded internationally — from $200 billion in 2005 to $509 billion in 2016. Similar information collected by the U.S. Department of Homeland Security (DHS) between 2000 and 2018 shows that seizures of infringing goods at U.S. borders have increased 10-fold, from 3,244 seizures per year to 33,810.
>
> …
>
> The rise in consumer use of third-party marketplaces significantly increases the risks and uncertainty for U.S. producers when creating new products. It is no longer

6

enough for a small business to develop a product with significant local consumer demand and then use that revenue to grow the business regionally, nationally, and internationally with the brand protection efforts expanding in step. Instead, with the international scope of e-commerce platforms, once a small business exposes itself to the benefits of placing products online — which creates a geographic scope far greater than its more limited brand protection efforts can handle — it begins to face increased foreign infringement threat.

. . .

Moreover, as costs to enter the online market have come down, such market entry is happening earlier and earlier in the product cycle, further enhancing risk. If a new product is a success, counterfeiters will attempt, often immediately, to outcompete the original seller with lower-cost counterfeit and pirated versions while avoiding the initial investment into research and design.

. . .

Counterfeiters have taken full advantage of the aura of authenticity and trust that online platforms provide. While e-commerce has supported the launch of thousands of legitimate businesses, their models have also enabled counterfeiters to easily establish attractive "store-fronts" to compete with legitimate businesses.

*See Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit 2**) at 4, 8, 11.

10.     Not only are the creators and brand holders harmed, the public is harmed as well:

The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e-commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers.
The President's historic memorandum provides a much warranted and long overdue call to action in the U.S. Government's fight against a massive form of illicit trade that is inflicting significant harm on American consumers and businesses. This illicit trade must be stopped in its tracks.

*Id.* at 3, 4. (Underlining in original).

11.     This Court has personal jurisdiction over each Defendant, in that each Defendant

conducts significant business in Illinois and in this Judicial District, and the acts and events giving

rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this

Judicial District. In addition, each defendant has offered to sell and ship infringing products into this Judicial District.

12.    This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## THE PLAINTIFF

13.    Plaintiff, American country music singer and songwriter LUKE COMBS, released his 2017 debut album, *This One's For You*, which reached number four on the *Billboard* 200. His second album, *What You See Is What You Get*, released in 2019, topped the charts in multiple territories. The deluxe version of the album includes the song "Forever After All", which reached number two in the U.S. His music has earned him two Grammy Award nominations, five CMA awards, and two iHeart Radio music awards, among other awards and nominations.

14.    Plaintiff is engaged in the business of manufacturing, distributing and retailing quality merchandise including within the Northern District of Illinois District (collectively, the "Plaintiff's Products") under the Federally registered LUKE COMBS Trademarks. Defendants' sales of Counterfeit Products in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

15.    Plaintiff's brand, symbolized by LUKE COMBS Trademarks, is a recognized symbol of high-quality merchandise. LUKE COMBS Trademarks are distinctive and identify the merchandise as goods from Plaintiff. The registrations for LUKE COMBS Trademarks constitute

prima facie evidence of their validity and of Plaintiff's exclusive right to use LUKE COMBS trademarks pursuant to 15 U.S.C. § 1057 (b).

16.     LUKE COMBS Trademarks have been continuously used and never abandoned.

17.     Plaintiff have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting LUKE COMBS Trademarks. As a result, products bearing LUKE COMBS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE DEFENDANTS

18.      Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit LUKE COMBS products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

19.     The success of the LUKE COMBS brand has resulted in its significant counterfeiting. Defendants conduct their illegal operations through fully interactive commercial websites hosted on various e-commerce sites, such as Amazon, eBay, ContextLogic, Ali Express, DHgate, etc. Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit

products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois.

20.     Upon information and belief, Defendants are an interrelated group of counterfeiters working in concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products.

21.     Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of LUKE COMBS Trademarks, including their exclusive right to use and license such intellectual property and the goodwill associated therewith.

22.     Upon information and belief, Defendants also deceive unknowing consumers by using LUKE COMBS Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for LUKE COMBS products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Aliases listings show up at or near the top of relevant search results and misdirect consumers searching for genuine LUKE COMBS products. Further, Defendants utilize similar illegitimate SEO tactics to propel new online stores to the top of search results after others are shut down.

23.     Defendants' use of the trademarks on or in connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake and deception by and among consumers and is irreparably harming Plaintiff. Defendants have manufactured, imported, distributed, offered for sale and sold Counterfeit Products using LUKE COMBS Trademarks and continue to do so.

24. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use LUKE COMBS Trademarks in connection with the advertisement, offer for sale and sale of the Counterfeit Products, through, inter alia, the Internet. The Counterfeit Products are not genuine LUKE COMBS Products. The Plaintiff did not manufacture, inspect or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. The Defendant Aliases offer shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

25. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Counterfeit Goods that infringe upon LUKE COMBS Trademarks unless preliminarily and permanently enjoined.

26. Defendants' use of LUKE COMBS Trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit LUKE COMBS products, including the sale of counterfeit LUKE COMBS products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

27. Plaintiff repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

28. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered LUKE COMBS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of

infringing goods. LUKE COMBS Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under LUKE COMBS Trademarks.

29.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with LUKE COMBS Trademarks without Plaintiff's permission.

30.     Plaintiff is the exclusive owner of LUKE COMBS Trademarks. Plaintiff's United States Registrations for LUKE COMBS Trademarks (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in LUKE COMBS Trademarks, and are willfully infringing and intentionally using counterfeits of LUKE COMBS Trademarks. Defendants' willful, intentional and unauthorized use of LUKE COMBS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

31.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to the reputation and the goodwill associated with the well-known LUKE COMBS Trademarks.

33.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit LUKE COMBS products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34.     Plaintiff repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

35.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit LUKE COMBS products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit LUKE COMBS products by Plaintiff.

36.     By using LUKE COMBS Trademarks in connection with the sale of counterfeit LUKE COMBS products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit LUKE COMBS products.

37.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit LUKE COMBS products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to the reputation and the goodwill associated with the Plaintiff's trademarks.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, et seq.)

39.      Plaintiff repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

40.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit LUKE COMBS products as those of the Plaintiff's, causing a

likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine LUKE COMBS products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

41. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

42. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to his reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

    a. using LUKE COMBS Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine LUKE COMBS product or is not authorized by Plaintiff to be sold in connection with LUKE COMBS Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine LUKE COMBS product;

c.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit LUKE COMBS products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing LUKE COMBS Trademarks and damaging Plaintiff's goodwill;

e.  otherwise competing unfairly with Plaintiff in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear LUKE COMBS Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, , or any other online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit LUKE COMBS products; and

h.  operating and/or hosting websites at the Defendant Online Stores and any other online stores registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing LUKE COMBS Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine LUKE COMBS product or not authorized by Plaintiff to be sold in connection with LUKE COMBS Trademarks; and

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under

oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as, but not limited to, eBay, ContextLogic, DHgate, and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant domain names, and domain name registrars, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit LUKE COMBS products using a LUKE COMBS Trademarks, including any accounts associated with the Defendants listed on Schedule A;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit LUKE COMBS products using a LUKE COMBS Trademarks; and

c.  take all steps necessary to prevent links to the Defendant domain names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index; and

4)  That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of LUKE COMBS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5)   In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. §

1117(c)(2) of $2,000,000 for each and every use of a LUKE COMBS Trademarks;

6)   That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7)   Award any and all other relief that this Court deems just and proper.

DATED:  June 7, 2021                              Respectfully submitted,

                                                  */s/ Keith A. Vogt*
                                                  Keith A. Vogt (Bar No. 6207971)
                                                  Keith Vogt, Ltd.
                                                  111 West Jackson Boulevard, Suite 1700
                                                  Chicago, Illinois 60604
                                                  Telephone: 312-675-6079
                                                  E-mail:  keith@vogtip.com

                                                  **ATTORNEY FOR PLAINTIFF**